**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| *v.* | |
| **ANTOINE JORDAN-HARRIS** | **NO. 21-174-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                                          **September 23, 2021**

Defendant Antoine Jordan-Harris has been charged by a federal grand jury in a Bill of

Indictment[1] as follows:

Count One:  Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); and

Count Two:  Using and carrying a firearm during and in relation to a crime of
violence, that is, the Hobbs Act robbery charged in Count One, in violation of 18
U.S.C. § 924(c)(1)(A)(ii).[2]

(Doc. No. 9.)

Presently before the Court is Defendant's Motion for Release Pending Trial.  (Doc. No.

17.)  Following Defendant's detention hearing on April 13, 2021, U.S. Magistrate Judge David

R. Strawbridge found that Defendant had failed to rebut the presumption of detention and there

were no conditions that could assure the safety of others in the community.[3]  (Apr. 13, 2021 Det.

---

[1] Defendant was initially charged in a Federal Criminal Complaint.  (Doc. No. 1.)

[2] The indictment references subsection (c)(1)(A)(ii), which states the punishment that applies if a firearm
is brandished, that is a mandatory consecutive sentence of 7 years imprisonment.  The indictment,
however, does *not* reference that the firearm was brandished.  It only states that a firearm was knowingly
used and carried during and in relation to the crime of violence, which carries a mandatory consecutive
sentence of 5 years.  18 U.S.C. § 924(c)(1)(A)(i).

[3] The Magistrate Judge previously found that "there well may not be enough evidence to detain
[Defendant] predicated upon the risk of appearance."  (Apr. 13, 2021 Det. Tr. Hr'g at 9:23–25.)

Hr'g Tr. at 10:4–12.)  Judge Strawbridge ordered Defendant detained pending trial.  (Doc. No. 8.)  On September 7, 2021, Defendant filed the instant motion, and on September 15, 2021, the government filed its opposition (Doc. No. 19).  Upon consideration of the evidence presented before the Court at a hearing on September 20, 2021 and the arguments of counsel, Defendant's motion will be denied, and Defendant shall remain detained pending trial.[4]

## I.      Standard of Review

This Court has jurisdiction to review the Magistrate Judge's decision under 18 U.S.C. § 3145(a)(1).  Pursuant to Section 3145(a)(1), this Court is required to conduct a *de novo* review of the Magistrate Judge's ruling.  *See United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985); *see also United States v. Talbert*, No. 20-266, 2020 WL 6048788, at *3 (W.D. Pa. Oct. 13, 2020).  In conducting this review, the district court may rely on the transcript of the proceeding before the Magistrate Judge.  *Talbert*, 2020 WL 6048788, at *3; *see also United States v. Rodriguez*, Criminal Action No. 07-709, 2007 WL 4373042, at *2 (E.D. Pa. Dec. 13, 2007).

Section 3142(e)(3) of the Bail Reform Act, 18 U.S.C. § 3141 *et seq.* provides as follows:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . . (B)  an offense under section 924(c), 956(a), or 2332b of this title . . . .

An indictment is sufficient to establish the existence of probable cause and trigger the Bail Reform Act's rebuttable presumption.  *United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986).  Once the presumption is triggered, the burden shifts to the Defendant to produce

---

[4] Trial is scheduled to begin in less than three weeks, on Tuesday, October 12, 2021.

evidence that he is neither a danger to the community nor a flight risk. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986) ("[D]efendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community.").

Section 3142(g) of the Bail Reform Act delineates four factors that the Court should consider in determining whether conditions of release exist that "will reasonably assure" Defendant's appearance "as required and the safety of any other person and the community":

> (1) the nature and circumstances of the offense charged;
>
> (2) the weight of the evidence against [Defendant];
>
> (3) the history and characteristics of [Defendant], including (A) [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . .; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release.

18 U.S.C. § 3142(g); *see also United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986). ("Judicial officers making risk of flight determinations are guided by the factors set forth in § 3142(g)."); *United States v. Miller*, No. Crim.A. 00-103-02, 2000 WL 633048, at *2 (E.D. Pa. May 5, 2000).

As noted above, Defendant must present sufficient evidence to rebut the presumption in this case as Defendant has been charged with a violation of 18 U.S.C. § 924(c).

## II.    Findings of Fact

The Court makes the following Findings of Fact with respect to pre-trial detention:

1.    On April 22, 2021, a federal grand jury returned a bill of indictment charging Defendant with one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and one count of using and carrying a firearm during and in relation to a crime of violence, that is, the

Hobbs Act robbery charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  (Doc. No. 9.)

2.      The indictment alleges that on October 27, 2020, Defendant committed an armed robbery of the 7-Eleven located at 2034 North Broad Street in Philadelphia.  (*Id.*)  According to the indictment, Defendant used and carried a SCCY, 9mm semi-automatic pistol with an obliterated serial number, loaded with nine live rounds of 9mm ammunition during and in relation to this robbery.  (*Id.* at p. 3.)

3.      Prior to the indictment, law enforcement obtained a Federal Criminal Complaint, which was supported by a sworn Affidavit of Probable Cause.  (Doc. No. 1 at pp. 2–6.)  According to the Affidavit, the armed robbery was captured by CCTV and a dispatcher from the Temple University Police Department observed the armed robbery being committed in real time.  (*Id.* at pp. 3–4.)  At approximately 2:00 a.m., Defendant and several other males entered the 7-Eleven.  (*Id.* at p. 2.)  Defendant was wearing a hoodie sweatshirt.  (*Id.* at p. 4.)  Within minutes of entering the store, Defendant raised a baseball bat and repeatedly hit a television set hanging at the front of the store.  (*Id.* at pp. 2–3.)  Defendant then hit the hot food display counter and the credit card payment keypads near the counter where a cashier clerk was standing.  (*Id.*)  Defendant next produced a firearm and pointed it at the cashier clerk while loudly counting down from ten and demanding money.  (*Id.* at p. 3.)  The frightened clerk turned over approximately $400.  (*Id.*)  Defendant and the other persons left the store.  (*Id.*)  Defendant fled to a parked car a couple of blocks from the store.  (*Id.*)

4.      Law enforcement found Defendant at the vehicle,[5] and he was placed under arrest

---

[5] The government proffered that Defendant was wearing a distinctive sweatshirt, as well as a necklace at the time he committed the robbery, and that the same sweatshirt and necklace were found with Defendant as he sat inside the vehicle.  (Sept. 20, 2021 Det. Hr'g.)  Defendant's counsel disputed that Defendant was found inside the vehicle and instead proffered that Defendant was found leaning into the driver's side of

and transported to the police station.  (*Id.* at pp. 3–4.)  Officers seized a loaded firearm and approximately $400 from the vehicle.  (*Id.* at p. 3.)

5.      Defendant was given his *Miranda* warnings and agreed to talk with law enforcement.  (*Id.* at p. 5.)  Defendant admitted that he had robbed the 7-Eleven at gunpoint. (*Id.*)

6.      Defendant, age 21, is a lifelong resident of Philadelphia, Pennsylvania. Defendant proffered that he did not have a stable residence at the time of his arrest and only occasionally stayed at his mother's house; however, if he were now released he would reside with his mother.  (*See* Sept. 20, 2021 Det. Hr'g.)  Defendant's mother lives in a 5-bedroom home in Philadelphia with Defendant's three younger sisters (ages 13, 15 and 17).  (*Id.*)  Defendant also reports that a family friend is willing to employ him at a Pretzel Factory store located in the Philadelphia Zoo.  (*Id.*)

7.      Multiple family members attended the hearing to show their support for Defendant.  Defendant's mother testified during the hearing and reported that her home has a land line that could be used for electronic monitoring.  Defendant's mother also testified that she would be willing to report her son if he failed to abide by the conditions of pre-trial release. Defendant's mother testified that she talked to a Pre-Trial Services Officer at the time of Defendant's arrest, but she did not believe there was a conversation about Defendant being released to her home at that time.[6]

8.      Defendant reported to the Pre-Trial Services Officer that he was unemployed at

the vehicle.  (*Id.*)

[6] The Pre-Trial Services Report ("PTSR") states that the Pre-Trial Services Officer talked with both Defendant's mother and adult sister, who both recommended at that time that if Defendant was released, he would live with his adult sister and her boyfriend at her home, rather than his mother.  (PTSR at p. 1.) No explanation was offered for this change in recommendation by Defendant's family.

the time of his arrest but he previously worked at a McDonalds and UPS.  (PTSR at p. 2.)

Defendant had planned to start employment at Wal-Mart.  (*Id.*)  In addition, Defendant stated he

had attended Overbrook High School.  (*Id.* at p. 1.)  Defendant admitted to regularly using

marijuana prior to his arrest but has no history of treatment for substance use.  (*Id.* at 2.)

Defendant is in good physical health with no medical problems.  (*Id.*)

       9.      Defendant has a prior arrest at age 18 for receiving stolen property and

unauthorized use of a motor vehicle for which Defendant received an Accelerated Rehabilitative

Disposition.  (*Id.* at pp. 2–3.)

**III.  Discussion**

       Defendant argues that he has strong ties to the community and strong family ties.  He

now has a stable place to live with his mother and three sisters and will be gainfully employed if

released.  Defendant argues that electronic monitoring can be installed at his mother's residence,

and that "a stay away order" could be issued to ensure Defendant does not go to the victim store.

Additionally, Defendant states that the Court can order "no contact" with any potential witnesses

in the case.  And Defendant argues he has no prior convictions.

       The government does not dispute that Defendant has strong family ties and no prior

felony convictions.  The government argues, however, that the case against Defendant is

substantial.  The government contends the evidence will establish that Defendant committed a

violent armed robbery and that the surveillance evidence, together with the testimonial evidence,

will establish Defendant's guilt beyond a reasonable doubt.  The government argues that

Defendant is facing a significant term of imprisonment if convicted.  The government states that

the advisory guideline sentence for the substantive Hobbs Act robbery is 33 to 41 months, which

would be followed by a mandatory consecutive sentence of 7 years imprisonment if Defendant is

convicted of a § 924(c) violation.[7]  Thus, the government argues Defendant has failed to rebut the Bail Reform Act's presumption in this case.

Although it is a close call, after considering the factors outlined in § 3142(g) of the Bail Reform Act, including Defendant's strong community ties, significant family support and lack of prior convictions, given the extraordinary violent nature of the offenses, the Court finds that Defendant has failed to rebut the presumption in this case.  Defendant is 21 years old.  If convicted of the serious violent offenses charged in the indictment, Defendant faces a significant term of imprisonment.  Under the sentencing guidelines, it would appear that Defendant is facing 93 to 101 months imprisonment, which includes a mandatory sentence of 60 months for the § 924(c) violation.[8]  Notwithstanding Defendant's strong family ties and strong ties to the community, facing such a significant sentence for Defendant's first felony arrest provides a very strong incentive to not appear for trial.  The government's evidence appears to include surveillance video, a dispatcher who watched the crime unfold in real time, as well as Defendant's confession after waiving his *Miranda* warnings.  There is no doubt that the circumstances of this armed robbery were extremely violent.  The allegations include Defendant violently smashing a television and counter displays with a baseball bat and then producing a firearm and pointing it at the cashier clerk as Defendant loudly counted down from ten and demanded money.  The Court is mindful that the indictment is not evidence and Defendant is presumed innocent, but the Court must consider the nature and circumstances of the offenses charged and finds that Defendant has not provided sufficient evidence to rebut the presumption

---

[7] As noted *supra* in footnote 2, the indictment only states the firearm was used and carried, and as such, Defendant would only face a mandatory consecutive sentence of 5 years for the § 924(c) violation.  *See* 18 U.S.C. § 924(c)(1)(A)(i).

[8] The Court recognizes the government argues that Defendant faces a mandatory sentence of 84 months for the § 924(c) violation, which would result in a guideline range of 117 to 125 months imprisonment.

and ensure the safety of the community.  And the weight of the evidence against Defendant combined with the potential severe penalty he faces if convicted creates a serious risk that Defendant will flee to avoid such penalties; and even bond and electronic monitoring are not enough to ensure his obligation to appear before the Court.

For these reasons, the Court determines that Defendant has failed to rebut the presumption and no condition or combination of conditions will reasonably assure the safety of the community and the appearance of Defendant as required.

## IV.    Conclusion

For the foregoing reasons, the Court denies Defendant's motion.